UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON FOUST #788816,

    Plaintiff,

v.

UNKNOWN PANNELL,

    Defendant.
_____/

Hon. Phillip J. Green

Case No. 1:22-cv-00867

## OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF Nos. 52, 53). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). For all the reasons discussed herein, Defendant's motion will be granted, and this matter is terminated.

## BACKGROUND

Plaintiff is an inmate currently incarcerated at the St. Louis Correctional Facility located in St. Louis, Michigan. The events described in Plaintiff's Complaint, however, allegedly occurred at the Brooks Correctional Facility (BCF) located in Muskegon Heights, Michigan. Plaintiff sued Defendant Correctional Officer Quinzell Pannell under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights.

On January 30, 2022, Defendant issued Plaintiff a "Class II Misconduct" ticket for disobeying a direct order. The following day, on January 31, 2022, a non-party

correctional officer conducted a misconduct review with Plaintiff and memorialized the following comments:

> Good morning all, just wanted to inform you of another prisoner threatening to write PREA [Prison Rape Elimination Act] on Officer Pannell and Krauss. I was reviewing 2 class II misconducts on prisoner Foust 788816… when he became upset of the charges given… Once I was finished with the review process… he requested a grievance which was given to him. He then looked at Officer Krauss and said "I got something for you and Pannell when I file PREA on your asses." This is becoming more common with level IV prisoners filing PREA or making threats to file PREA when written a misconduct. Is there anything we can do to combat this?

(ECF No. 53-6, PageID.349).

A month later, on February 14, 2022, Defendant issued Plaintiff another misconduct ticket for blocking his cell door with food trays. (ECF No. 53-8, PageID.361-62). That same day, Plaintiff then filed a grievance stating that Defendant kicked Plaintiff when attempting to dislodge the tray from the cell door. Notably, Plaintiff stated in his grievance that he was housed in cell "D-55," located in the general population unit. (ECF No. 30-2, PageID.166).

The following day, on February 15, 2022, Plaintiff was interviewed by a social worker to "identify the cause, scope, and nature of stress to an inmate's mental health[.]" (ECF No. 53, PageID.272). Plaintiff reiterated his frustrations regarding the tray-kicking incident and generally cooperated with the social worker. (*See* ECF No. 53-9, PageID.364-66).

The next day, on February 16, 2022, Plaintiff received another misconduct ticket and was moved from the general population unit to "Segregation cell 18." (ECF No. 53-10, PageID.370). Thereafter, on February 22, 2022, Plaintiff phoned his aunt

and indicated an interest in filing a $200,000 lawsuit; Plaintiff also reiterated his dissatisfaction with the tray-kicking incident. (ECF No. 53-12, PageID.421-23).

On February 22, 2022, the prison's grievance coordinator received Plaintiff's PREA (Prison Rape Elimination Act) grievance, dated February 12, 2022, alleging that Defendant escorted Plaintiff into a supply closet, exposed his penis, and stated that he would make Plaintiff's life "hell" unless Plaintiff performed oral sex.[1] (Compl., ECF No. 1, PageID.3). Plaintiff claims that he refused and Defendant allowed him to exit the supply closet. (*Id.*). The PREA grievance also included Plaintiff's complaints regarding the tray-kicking incident and stated that Plaintiff's cell number was "Seg 18." (ECF No. 53-7, PageID.359).

Plaintiff then filed the instant action against Defendant on September 20, 2022, alleging that Defendant's actions on February 12, 2022, violated his Eighth Amendment rights. Defendant "vehemently" denies that he exposed himself to Plaintiff and claims that Plaintiff fabricated and backdated his PREA grievance, per Plaintiff's threat to do so on January 31, 2022. (ECF No. 53, PageID.281).

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient

---

[1] These events allegedly took place on the same day as Plaintiff's completion of the PREA grievance form (i.e., on February 12, 2022). (*See* ECF No. 53-7, PageID.359).

opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the nonmoving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and… may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

In his Motion for Summary Judgment, Defendant first alleges that there is no dispute of material fact, as no reasonable jury could find Plaintiff's allegations credible. Specifically, Defendant alleges that: (1) Plaintiff announced an intention to abuse the PREA grievance system to target Defendant; (2) the PREA grievance itself demonstrates that Plaintiff backdated and fabricated the grievance; and (3) the

circumstantial evidence generally supports a reasonable inference that Plaintiff fabricated his PREA grievance. (ECF No. 53, PageID.278-81). Defendant further alleges that "Plaintiff's claim presents wrongdoing short of a cognizable Eighth Amendment claim[,]" citing to case law involving similar instances of alleged sexual harassment where the court found no Eighth Amendment violation. (*Id.* at PageID.282-91). Defendant separately asserts a qualified immunity defense, arguing that federal case law has not "clearly established" whether Defendant's alleged actions violated Plaintiff's constitutional rights. (*Id.* at PageID.291-93).

In response, Plaintiff alleges that he has exhausted his administrative remedies. (*See* ECF No. 63, PageID.466-73). Plaintiff does not address the substance of Defendant's argument nor contest Defendant's factual allegations.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Constitution "does not mandate comfortable prisons, but neither does it permit inhumane ones and the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020).

Here, the undersigned agrees with Defendant that, on this record, no reasonable jury could find that an Eighth Amendment violation occurred.

First, the record demonstrates that Plaintiff was moved to a segregation unit on February 16, 2022; it is undisputed that Plaintiff did not know he was being moved to the segregation unit. (*See generally*, ECF No. 63). Plaintiff's PREA grievance, however, was allegedly completed days before on February 12, 2022; yet, it somehow states that his cell number was "Seg 18." In a similar vein, this Court notes that Plaintiff's non-PREA grievance, filed February 14, 2022, states that Plaintiff's cell number is "D-55." No reasonable jury, therefore, could find that Plaintiff's PREA grievance was written prior to February 16, 2022, the day when Plaintiff was moved to the segregation unit.

Second, the PREA grievance coordinator testified that, each day, correctional officers routinely collect grievances from inmates for processing on the following day. The grievance coordinator testified that Plaintiff's PREA grievance could not have been filed more than a day before she received it, which was on February 22, 2022. (ECF No. 53-7, PageID.354-55). Thus, the alleged date of Plaintiff's PREA grievance is cast into doubt.[2]

Third, Defendant has adduced uncontradicted evidence demonstrating that, on January 31, 2022, Plaintiff threatened to file a fabricated PREA grievance against Defendant because of Defendant's involvement in issuing Plaintiff misconduct tickets. (ECF No. 53-6, PageID.349). As Defendant was the sole correctional officer

---

[2] This Court notes that, in the context of sexual assault and harassment cases, it is not uncommon for victims to hesitate or delay in filing documentation of their assault. Given the wealth of circumstantial evidence in this case, however, casting doubt upon Plaintiff's PREA grievance and the allegations underlying his Complaint, this Court is satisfied that Plaintiff's allegations do not fall into said unfortunate realm.

involved in issuing the misconduct tickets (e.g., Defendant was the officer whom Plaintiff allegedly disobeyed a direct order from), Plaintiff thus had personal knowledge that Defendant was responsible for the misconduct tickets.

Fourth, Defendant submitted a transcript of Plaintiff's February 22, 2022, phone call to his aunt, the content of which also tends to undermine Plaintiff's allegations. In his phone call, Plaintiff reiterates his frustrations with MDOC staff and recounts a number of abuses he allegedly suffered at the hands of correctional officers. (ECF No. 53-12, PageID.414-23). In seeking legal relief for these abuses, however, Plaintiff does not mention that Defendant sexually harassed or assaulted him in a supply closet. (*Id.*). Similarly, during his conversation with an MDOC social worker, Plaintiff appears to freely air his frustrations with the prison's correctional officers, including the tray-kicking incident on February 15, 2022. (ECF No. 53-9, PageID.365-68). Plaintiff does not, however, mention the alleged sexual harassment or assault, despite the fact that Plaintiff shared a number of personal matters with the social worker (such as feeling like an animal in a cage, and feeling like he wants to give up). (*Id.* at PageID.368).

Defendant has put forth sufficient evidence to show that there is no genuine dispute as to any material fact. Plaintiff essentially failed to respond and does not contest Defendant's version of the facts. He has not submitted an affidavit or declaration. Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff's unsupported allegations do not allow for a reasonable inference that Defendant sexually harassed or assaulted him on February 12, 2022. Accordingly,

Defendant's Motion for Summary Judgment is granted, and this matter is terminated.

## CONCLUSION

For the reasons articulated herein, Defendant's Motion for Summary Judgment (ECF No. 52) is hereby **GRANTED** and this action terminated.

Furthermore, and for the same reasons that the Court grants Defendant's motion, the Court discerns no good-faith basis for an appeal within the meaning of 28 U.S.C. § 1915(a)(3). See McGore v. Wrigglesworth, 114 F.3d 601, 611 (6th Cir.1997) (overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007)).

A judgment consistent with this Opinion will enter.

Date: April 1, 2025    /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge